Receiver's First Report

5700-02 S. Ashland Ave.,
Chicago IL 60636

PNC BANK, NATIONAL ASSOCIATION, successor to National City Bank,
Plaintiff,

v.

PETER JOVANOVIC a/k/a PETAR JOVANOVIC, SRDJAN CEMERIKIC,
EQUITY INVESTMENT & VENTURE GROUP, LLC,
and the CITY OF CHICAGO,
Defendants.

Case No. 16-CV-09838

IN THE U.S. DISTRICT COURT OF THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION,

Honorable Judge Matthew F. Kennelly

For the period:
January 17, 2017 through April 30, 2017

Prepared by Antje Gehrken
A.R.E. Partners

**Receiver Appointment**

On January 17, 2017 a motion was granted to appoint Antje Gehrken, not personally, but solely as the court appointed receiver in 16 CV 09838 with respect to the property known as 5700-02 S. Ashland Ave., Chicago IL 60636. (*Exhibit 1*)

The court order did not require that the Receiver secure a bond.

**Property Overview**

The property is located at 5700-02 S. Ashland, Chicago, on the corner of 57th and Ashland, a major street in Chicago's Englewood neighborhood, surrounded by vacant lots and other commercial properties. It is a 9-unit mixed use property. One residential tenant vacated in April 2017; all other units, including the commercial space, are at present occupied.

Public records indicate the property is 7,644 sf, was built in 1900 and sits on a 50'x125' (5,550sf) parcel. The commercial tenant occupies ground floor commercial unit for a total of 3,600sf and is operated by a day care. There is a basement currently used for storage by the commercial tenant. The residential units are on the 2nd and 3rd floor (4 units per floor) and are accessed via interior corridor from the front and rear. There is no dedicated parking. The rear is an enclosed play yard utilized by the day care and includes a rear stairwell to access the residential units.







Each unit contains its own mechanicals, with tenants responsible for all utilities, except for water. There appears to be no in-unit air conditioning in the residential units. Two condenser units are visible underneath the rear stairs and are for the commercial space. The roof is flat and, based upon inspection, in poor condition. Access to the roof is limited to utilizing a ladder from the deck of the rear porch.

**Location Overview:**

The Property is located at 5700-02 S. Ashland Ave., Chicago IL 60636. The property is located in an area surrounded by vacant lots and other commercial properties. The property immediately to the south of the subject is a vacant lot. The property is on the main street Ashland Ave. in Chicago's Englewood neighborhood approximately 9 miles south of downtown Chicago.



**For the Period, the Receiver has:**

1. Served notice of Receivership on the tenants;
2. Contacted the Defendant and requested all documents and records pertaining to management of the property;
3. Researched property information;
4. Investigated property taxes;
5. Obtained insurance on the property;
   Performed regular internal and external inspections of property;
6. Opened an operating account;
7. Served Five-Day Notices;
8. Collected rents;
9. Switched applicable utilities and service contracts;
10. Performed maintenance items;
11. Performed an inspection of the roof and obtained quotes for repair;
12. Investigated and consulted on the commercial lease and tenant responsibilities;
13. Obtained possession of unit from non-paying tenant;

## Occupancy Information

A.R.E. Partners has made the following occupancy assessment of the property based upon conversations with the tenants and/or information provided by Defendant. All tenants pay their own heat and electric and have in-unit mechanicals.

| Unit Number | Unit Type | Tenant Name(s) | Monthly Rent Amount (1) | Lease Start Date | Lease End Date | Copy of Lease (2) | Security Deposit (3) |
|---|---|---|---|---|---|---|---|
| C | 3,600sf | First Start Academy South Patricia Cook | $4,200.00 | May-13 | May-18 | Y | $4,000.00 |
| 1-1 | 3BR/2ba | Rachel Dixon; Michael Dixon | $900.00 | Feb-14 | Jan-15 | 1st page | none |
| 1-2 | 3BR/2ba | Mary Williams (Mery Cole?) | $850.00 | Sep-15 | Aug-16 | 1st page | none |
| 1-3 | 3BR/2ba | Jasmine Love & Mekal Tyner | $750.00 | Oct-15 | Sep-16 | 1st page | none |
| 1-4 | 3BR/2ba | Shiadah Williams | $750.00 | Apr-16 | | | |
| 2-1 | 3BR/2ba | Tasha Profit (Flowers) | $850.00 | Nov-14 | Oct-15 | 1st page | none |
| 2-2 | 3BR/2ba | Claudette Teague | $850.00 | Apr-16 | | | |
| 2-3 | 3BR/2ba | Vacated April 2017 | | | | | |
| 2-4 | 3BR/2ba | Andrew Clark, Benjamin Clark, Moses Dixon | $800.00 | Nov-14 | Oct-15 | 1st page | none |

(1) – tenants pay own utilities

(2) – copies of leases / first pages where applicable as provided by the Defendant

(3) – information as provided in leases; Receiver has not received any security deposits from Defendant or tenants

Receiver is in constant communication with tenants to include Rent Collections. Unit 2-3 vacated in April 2017 after tendering no rent for the entire period. Receiver will determine marketability of the unit.

## Listing Details / Request to Market

The property is not currently listed. **Receiver requests permission to market the property for sale.**

## Vendors / Utilities

The following utilities and service contracts have been switched into the name of the Receiver and are being paid from the operating account.

Com Ed – Electric (common area and vacant unit)
City of Chicago – Water and Sewer
Republic Services - Scavenger
Rose Pest Solutions - Pest Control

## Defendant Docs / Accounting

Receiver contacted the Defendant's counsel to request accounting and documentation as requested and stipulated by the order.

The following items were received:

- Scavenger: Republic Services bills & contract
- City of Chicago:  water collection notice
- Greathouse Appliance Repair invoices
- Electric: ComEd BLDNG bills
- Louis Weinstock - attorney invoice
- C&L Supply Inc invoice
- City of Chicago - notice of ordinance violation
- Taxes:  2012 deposit for redemption annual sale, 2013 1st installment receipt
- Rose Pest Solutions invoices
- Copies of Leases:
  - Commercial / First Star Childcare Academy lease ($4,200/mo) states security deposit $4000. Lease states the tenant pays their share of taxes, insurance, and CAM. No indication of the percentages and no receipts or itemization for previous amounts collected.
  - Expired Unit 1-1 Lease – 1st page of lease only; application. Lease states $750; Email for Defendant's attorney indicates $900.
  - Expired Unit 1-2 Lease – 1st page of lease only; tenant info
  - Expired Unit 1-3 Lease - 1st page of lease only; tenant info
  - Expired Unit 2-1 Lease – 1st page of lease only
  - Expired Unit 2-3 Lease (rec'd 2 copies) – 1st page of lease only; tenant info
  - Expired/Irrelevant Unit 2-2 Lease – 1st page of lease only with applications. It appears these tenants no longer reside in the building. No lease for the current tenant who indicated she has been there since April 2016.
  - No leases received for current occupants in units 1-4 and 2-2.

**To date, the Defendant has provided no security deposit(s), cash/income, list of all current litigation or regulatory proceedings, books and records, etc. as required to be turned over to the Receiver as requested and stipulated by the order.**

## Maintenance

For the Period, Receiver has:

- Changed common area locks; keys distributed;
- Performed routine lawncare and grounds / common area cleanup;

- Inspected units and performed routine in-unit maintenance;
- Replaced light bulbs in exit signs and in overhead fixtures;
- Assess and commence place fire extinguishers in common areas;
- Continue working with tenants re: access for unit inspections;
- Work with commercial tenants re: landlord vs. occupant responsibilities;
- Assess condition of roof and tuckpointing and determined both in poor condition (*Exhibit A*). Quotes for repair have been provided to Plaintiff;
- Continues to assess units and maintenance requirements.

## Commercial Unit / Lease

The Commercial Unit is being operated by a Day Care (First Star Childcare Academy) that has been in place since May 2013. The lease is in place until May 2018. The tenant pays $4200 rent by the 24th of the month and is current through April 2017. The tenant pays their own utilities and provides their own pest control.

- The lease as provided by the Defendant indicates a security deposit of $4000. (*Exhibit B Redacted*). The Defendant disputes this indicating that there are no security deposits. The Receiver has received no security deposits from the tenant nor the Defendant.
- The lease is an "absolute carefree triple net". Both Defendant and tenant indicate no additional rents have been paid by the tenant to the landlord toward the common area maintenance, taxes, or insurance and no accounting for such has been turned over to the Receiver.
- The Defendant indicates maintenance of the unit is the responsibility of the tenant. The Defendant also indicates that the furnace has been serviced by the Landlord as it is the property of the building.
- The Tenant indicates that maintenance of items within the unit have been handled by the Landlord. The Receiver is awaiting a detailed list of items.
- The Defendant indicates the basement is not part of the tenants lease; the tenant has been storing items in the basement and, due to seepage, etc., these items have been destroyed. Receiver is awaiting updates from the tenant.
- Heavy rains have resulted in leaking into the unit. The Receiver has investigated and provided quotes for roof and tuck-pointing. The tenant claims items have been destroyed as part of this leaking into the commercial unit. Receiver is awaiting updates from the tenant.
- The tenant's pest control found evidence of pavement ants and recommended sealing cracks along the foundation. The Receiver is working with maintenance and tenant's pest control to perform these repairs.
- The tenant provided a list of items that required repair per the City of Chicago's inspector. (*Exhibit C*). Receiver has reached out to Defendant and Plaintiff to determine responsibility for these items. The Receiver has not received an official inspection report from the City or the DayCare/tenant.

Defendant indicates maintenance items are the responsibility of the Tenant. Tenant indicates the Landlord has performed repairs. Plaintiff's counsel reviewed the lease to interpret that "the tenant is indeed responsible for most of these repairs.… Assuming [general exhaust and furnace] are located outside the office, in a common area, the Landlord is responsible for their repair."

**Receiver may choose to engage Counsel for the purpose of dealing with lease issues.**

## Insurance

Receiver has obtained insurance for the property. The Defendant, through their attorney, confirmed Defendant did not have insurance on the property.

## Property Taxes

The property appears to have one PIN: 20-18-223-024-0000.

Per the Cook County Property Tax Portal, 2016 taxes and late fees in the amount of $4,055.57 are due. 2015 taxes were paid in full.

Previous year tax sale information is attached. (*Exhibit D*)

    2016:  Tax Sale Has Not Occurred

    2015:  Tax Sale Has Not Occurred

    2014:  Taxes Sold and Redeemed

    2013:  No Tax Sale

    2012:  Taxes Sold and Redeemed

## Municipal Violations

Research of the City of Chicago Building Violations website shows the subject property failed an annual conservation inspection in November 2016 (details below). Full list of the City of Chicago's Building Violations attached. (*Exhibit E*)

| # 9950943 | | |
|---|---|---|
| **VIOLATION** | **BUILDING CODE CITATION** | **VIOLATION DETAILS** |
| CN062024 | Failed to maintain parapet wall in good repair and free from cracks and defects. (13-196-530 and 13-196-641) | North elevation parapet wall has spalling and loose cement parge. |
| CN107015 | Failed to provide and maintain adequate illumination for public hall and stairwell. (13-196-080, 13-196-450, 13-160-660, 13-160-670) | 1st floor day care center (2) emergency lights out of service. |
| CN073014 | Failed to maintain exterior door in sound condition and repair. (13-196-550(d) and (e), 13-196-641) | West elevation 2nd floor exit door broken hinges. |
| CN107035 | Failed to maintain all exit signs illuminated when building is occupied and otherwise maintain exit signs in good condition. (13-196-090, 13-160-700 thru 13-160-770) | 2nd floor exit signs out of service. |
| CN197079 | Repair or replace defective or out of service smoke detectors and operate continuously. (13-196-130, 13-196-140) | 2nd floor hallway smoke detector beeping. |
| CN133016 | Repair or replace defective and dangerous carpeting. (13-196-630, 13-196-540) | Carpeting in stairwells from 1st thru 3rd floor very dirty. |
| CN190019 | Arrange for inspection of premises. (13-12-100) | No response/entry at time of inspection.Gained entry |

| | | |
|---|---|---|
| | | to daY care center and some units but not all to verify Occupancy,Detectors and overall condition for 2016 annual inspection. |
| NC2021 | Performed or allowed work to be performed erecting, enlarging, altering, repairing, removing or demolishing a building or part of a building without a permit. (13-12-050, 13-32-010, 13-32-130) | Rear parking Lot - Permit required for six foot hight wrought iron fence with two 10 foot high rolling driveway gates. |
| CN078014 | Failed to provide and maintain adequate illumination of exit areas. (13-160-660, 13-160-670, 13-196-080) | Rear porch- No exterior lighting . Requires electrical permit. |
| CN106015 | Failed to maintain interior stairway system in safe condition and sound repair. (13-196-570) | Basement interior stairs - Stair system weak , no stringer support- missing guardrails and handrails |
| CN196029 | Post name, address, and telephone of owner, owner's agent for managing, controlling or collecting rents, and any other person managing or controlling building conspicuously where accessible or visible to public way. (13-12-030) | Building - Owners I.D. sign - Not complete ,missing street address. |
| PL169017 | Remove sewage and stagnant water from basement and correct cause. (13-196-580 A, 7-28-060) | Basement - Floor damp with standing water. |
| PL237058 | Provide discharge pipe from water heater and hot water storage tank relief valve. (18-29-504.7.1) | |

### Court Cases

The Receiver is not aware of any active court cases at this time.

### Operating Account

The Receiver maintains an operating account at PNC Bank. (*Exhibit F*)

Receiver requests total fees as indicated below be paid from the operating account.

### Accounting

NOTE: The court order approved a property management fee of $895 in the Order. The property management fee should be $875 and has been adjusted in the invoice.

**To date, the Defendant has provided no security deposit(s), cash/income, list of all current litigation or regulatory proceedings, books and records, etc. as required to be turned over to the Receiver as requested and stipulated by the order.**

No other accounting information has been provided.

The Receiver requests reimbursement of $44.73 for out of pocket expenses for the Period.

The Receiver seeks approval of monthly fees in the amount of $6120.22 derived from the fee schedule below and supported by Statement (invoice) #11014.

Hourly Rate for Principals: $165.00
Hourly Rate for support staff: $65.00
Rate for outside company staff: Per activity / Person, direct billed
Third Party Vendors: Actual costs + 10%
Supplies: Actual cost

**The Receiver seeks approval of total fees in the amount of $6,164.95, derived from the attached Statement (invoice) #11014.** (*Exhibit G*)

Receiver requests total fees as indicated be paid from the operating account.

**The Receiver respectfully asks for approval of her First Report and everything contained herein.**

**Verification:**

The undersigned certifies the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters the undersigned certified as aforesaid the she verily believes the same to be true.

Wherefore, the Receiver respectfully submits the Receiver's First Report for the period ending April 30, 2017.

The next court date is: TBD in courtroom 2103 of the Dirksen Federal Building.

Respectfully submitted,

Antje Gehrken, not individually,
But solely as the duly appointed Receiver

Antje Gehrken
A.R.E. Partners
2923 N. Milwaukee Ave., #306
Chicago IL 60618
312-300-7237
*fax:* 312-757-5599
*email:* agehrken@arepartners.com

# Exhibit A

# Roof Condition Photos

A.R.E. Partners

**Date:** April 14, 2017

**Address:** 5700-02 S Ashland Ave., Chicago

**Bank:** Receivership

**By: AB**

**Type of Visit:** ☐ Regular ☐ Initial ☒ Other:

**A.R.E. "No Trespassing" sign visible at property?** ☒ Yes ☐No
**A.R.E. Management sign posted (Not required for RECEVERSHIP):** ☒ Yes ☐No
List any signs from city, utilities, etc. posted on the building: A.R.E. Partners "For Sale" Sign.

**Interior conditions, photos taken:** ☒ Yes ☐No ☐ Exterior visit only ☒ Other:

Water has been observed entering the building in multiple areas. The leaks are principally concentrated along the Ashland Avenue elevation. Occupied units are being affected and interior building damage in ongoing.

**Exterior conditions, photos taken:** ☒ Yes ☐No ☐ Other:

Inspections of the roof and the tuck-pointing have indicated areas of damage that need repair. Photos attached.

**Alert the Client of recent activity at location:** ☒ Yes ☐No Alert needed at this time



Photos:

Roof:



Tuck-pointing:



Receiver's First Report - 16-CV-09838
5700-02 S. Ashland Ave., Chicago
Page 26 of 56

Exhibit B

Commercial Lease
Redacted

## COMMERCIAL LEASE AGREEMENT

**THIS LEASE** (this "Lease") dated this 1st day of April, 2013

**BETWEEN:**

**Srdjan Cemerikic of 2544 Oak Park Ave. Berwyn IL 60402**
Telephone: 708-717-3718    Fax: 708-795-9461
(the "Landlord")

OF THE FIRST PART

- AND -

**First Start Childchare Academy Inc - South of 5700 S Ashland Ave. Chicago, IL
60636**
Telephone: 708-259-8242
(the "Tenant")

OF THE SECOND PART

**IN CONSIDERATION OF** the Landlord leasing certain premises to the Tenant, the Tenant leasing those premises from the Landlord and the mutual benefits and obligations set forth in this Lease, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties to this Lease (the "Parties") agree as follows:

### Basic Terms

1.  The following basic terms are hereby approved by the Parties and each reference in this Lease to any of the basic terms will be construed to include the provisions set forth below as well as all of the additional terms and conditions of the applicable sections of this Lease where such basic terms are more fully set forth:

    a.  Landlord: Srdjan Cemerikic

    b.  Address of Srdjan Cemerikic:  2544 Oak Park Ave. Berwyn IL 60402

    c.  Tenant: First Start Childchare Academy Inc - South

    d.  Address of First Start Childchare Academy Inc - South:  5700 S Ashland Ave. Chicago, IL 60636

    e.  Operating Name of First Start Childchare Academy Inc - South: FSLCAS

    f.  Term of Lease: The term of the Lease is for 5 years to commence at 12:00 noon on May 1, 2013.

g.   Commencement Date of Lease: May 1, 2013

h.   Base Rent: $4,200.00, payable per month

i.   Permitted Use of Premises: Day care children facility

j.   Advance rent: None

k.   Security/Damage Deposit: $4,000.00

### Definitions

2.   When used in this Lease, the following expressions will have the meanings indicated:

a.   "Additional Rent" means all amounts payable by the Tenant under this Lease except Base Rent, whether or not specifically designated as Additional Rent elsewhere in this Lease;

b.   "Building" means all buildings, improvements, equipment, fixtures, property and facilities from time to time located at 5700 S Ashland Ave. Chicago, IL 60636, as from time to time altered, expanded or reduced by the Landlord in its sole discretion;

c.   "Common Areas and Facilities" mean:

   i.   those portions of the Building areas, buildings, improvements, facilities, utilities, equipment and installations in or forming part of the Building which from time to time are not designated or intended by the Landlord to be leased to tenants of the Building including, without limitation, exterior weather walls, roofs, entrances and exits, parking areas, driveways, loading docks and area, storage, mechanical and electrical rooms, areas above and below leasable premises and not included within leasable premises, security and alarm equipment, grassed and landscaped areas, retaining walls and maintenance, cleaning and operating equipment serving the Building; and

   ii.   those lands, areas, buildings, improvements, facilities, utilities, equipment and installations which serve or are for the useful benefit of the Building, the tenants of the Building or the Landlord and those having business with them, whether or not located within, adjacent to or near the Building and which are designated from time to time by the Landlord as part of the Common Areas and Facilities;

d.   "Leasable Area" means with respect to any rentable premises, the area expressed in square feet of all floor space including floor space of mezzanines, if any, determined, calculated and certified by

the Landlord and measured from the exterior face of all exterior walls, doors and windows, including walls, doors and windows separating the rentable premises from enclosed Common Areas and Facilities, if any, and from the center line of all interior walls separating the rentable premises from adjoining rentable premises. There will be no deduction or exclusion for any space occupied by or used for columns, ducts or other structural elements;

e.  "Premises" means the office space at 5700 S Ashland Ave. Chicago, IL 60636;

f.  "Proportionate Share" means a fraction, the numerator of which is the Leasable Area of the Premises and the denominator of which is the aggregate of the Leasable Area of all rentable premises in the Building.

**Intent of Lease**

3.  It is the intent of this Lease and agreed to by the Parties to this Lease that this Lease will be absolutely carefree triple net to the Landlord such that, all and every cost, expense, rate, tax or charge in any way related to the Premises, to the operation of the Building and to the Tenant's share of Operating Costs will be borne by the Tenant for its own account and without any variation, setoff or deduction whatsoever, save as specifically provided in this Lease to the contrary.

**Leased Premises**

4.  The Landlord agrees to rent to the Tenant the Premises for only the permitted use (the "Permitted Use") of: Day care children facility.
    Neither the Premises nor any part of the Premises will be used at any time during the term of this Lease by Tenant for any purpose other than the Permitted Use.

5.  The Landlord reserves the right in its reasonable discretion to alter, reconstruct, expand, withdraw from or add to the Building from time to time. In the exercise of those rights, the Landlord undertakes to use reasonable efforts to minimize any interference with the visibility of the Premises and to use reasonable efforts to ensure that direct entrance to and exit from the Premises is maintained.

6.  The Landlord reserves the right for itself and for all persons authorized by it, to erect, use and maintain wiring, mains, pipes and conduits and other means of distributing services in and through the Premises, and at all reasonable times to enter upon the Premises for the purpose of installation, maintenance or repair, and such entry will not be an interference with the Tenant's possession under this Lease.

7.  The Landlord reserves the right, when necessary by reason of accident or in order to make repairs, alterations or improvements relating to the Premises or to other portions of the Building to cause temporary obstruction to the Common Areas and Facilities as reasonably necessary and to interrupt or suspend the supply of electricity, water and other services to the Premises until the repairs, alterations or

improvements have been completed. There will be no abatement in rent because of such obstruction, interruption or suspension provided that the repairs, alterations or improvements are made expeditiously as is reasonably possible.

8.  Subject to this Lease, the Tenant and its employees, customers and invitees will have the non-exclusive right to use for their proper and intended purposes, during business hours in common with all others entitled thereto those parts of the Common Areas and Facilities from time to time permitted by the Landlord. The Common Areas and Facilities and the Building will at all times be subject to the exclusive control and management of the Landlord. The Landlord will operate and maintain the Common Areas and Facilities and the Building in such manner as the Landlord determines from time to time.

### Term

9.  The term of the Lease is for 5 years to commence at 12:00 noon on May 1, 2013.

10. Should the Tenant remain in possession of the Premises with the consent of the Landlord after the natural expiration of this Lease, a new tenancy from month to month will be created between the Landlord and the Tenant which will be subject to all the terms and conditions of this Lease but will be terminable upon either party giving one month's notice to the other party.

### Rent

11. Subject to the provisions of this Lease, the Tenant will pay a base rent of $4,200.00, payable per month, for the Premises (the "Base Rent").

12. The Tenant will pay the Base Rent on or before the tenth of each and every month of the term of this Lease to the Landlord.

13. In the event that this Lease commences, expires or is terminated before the end of the period for which any item of Additional Rent or Base Rent would otherwise be payable or other than at the commencement or end of a calendar month, such amounts payable by the Tenant will be apportioned and adjusted pro rata on the basis of a thirty (30) day month in order to calculate the amount payable for such irregular period.

### Operating Costs

14. In addition to the Base Rent, the Tenant will pay as Additional Rent, without setoff, abatement or deduction, its Proportionate Share of all of the Landlord's costs, charges and expenses of operating, maintaining, repairing, replacing and insuring the Building including the Common Areas and Facilities from time to time and the carrying out of all obligations of the Landlord under this Lease and similar leases with respect to the Building ("Operating Costs") which include without limitation or duplication,

all expenses, costs and outlays relating to the following:

a.  cleaning and janitorial services;

b.  operating and servicing elevators;

c.  all utilities supplied to the Common Areas and Facilities;

d.  security;

e.  window cleaning;

f.  all insurance relating to the Building as placed by the Landlord from time to time, acting prudently;

g.  repairs and replacements to the Building and any component of the Building;

h.  accounting and auditing;

i.  provision, repair, replacement and maintenance of heating, cooling, ventilation and air conditioning equipment throughout the Building;

j.  all amounts paid to employees or third parties relating to work performed in relation to the Building including in the case of employees all usual benefits, including a management fee not to exceed 5% of gross receipts from the Building;

k.  supplies used in relation to operating and maintaining the Building;

l.  provision of a building superintendent and associated personnel employed for the Building including a reasonable rental value for office space used by those persons and related expenses including uniforms;

m.  all outdoor maintenance including landscaping and snow removal;

n.  operation and maintenance of parking areas; and

o.  preventive maintenance and inspection.

15.     Except as otherwise provided in this Lease, Operating Costs will not include debt service, depreciation, costs determined by the Landlord from time to time to be fairly allocable to the correction of construction faults or initial maladjustments in operating equipment, all management costs not allocable to the actual maintenance, repair or operation of the Building (such as in connection with leasing and rental advertising), work performed in connection with the initial construction of the Building and the Premises and improvements and modernization to the Building subsequent to the date of original construction which are not in the nature of a repair or replacement of an existing component, system or part of the Building.

16.     Operating Costs will also not include the following:

    a.     any increase in insurance premiums to the center as a result of business activities of other Tenants;

    b.     the costs of any capital replacements;

    c.     the costs incurred or accrued due to the willful act or negligence of the Landlord or anyone acting on behalf of the Landlord;

    d.     structural repairs;

    e.     costs for which the Landlord is reimbursed by insurers or covered by warranties;

    f.     costs incurred for repairs or maintenance for the direct account of a specific Tenant or vacant space;

    g.     costs recovered directly from any Tenant for separate charges such as heating, ventilating, and air conditioning relating to that Tenant's leased premises, and in respect of any act, omission, neglect or default of any Tenant of its obligations under its Lease; or

    h.     any expenses incurred as a result of the Landlord generating revenues from common area facilities will be paid from those revenues generated.

17.     In computing Operating Costs there will be credited as a deduction the amounts of proceeds of insurance relating to insured damage. Any expenses not directly incurred by the Landlord but which are included in Operating Costs may be estimated by the Landlord, acting reasonably if and to the extent the Landlord cannot ascertain the actual amount of such expenses from the tenants who incurred them. Any report of the Landlord's independent chartered accountant for such purpose will be conclusive as to the amount of Operating Costs for any period to which such report relates. To the extent that any component of Operating Costs should be allocated, in the reasonable opinion of the Landlord, to any group of tenants,

the Landlord may, but will not be obliged to allocate the cost of that Component to Operating Costs of those tenants alone.

18. The Tenant will pay:

a. To the Landlord, the Tenant's Proportionate Share of all real property taxes, rates, duties, levies and assessments which are levied, rated, charged, imposed or assessed by any lawful taxing authority (whether federal, state, district, municipal, school or otherwise) against the Building and the land or any part of the Building and land from time to time or any taxes payable by the Landlord which are charged in lieu of such taxes or in addition to such taxes, but excluding income tax upon the income of the Landlord to the extent that such taxes are not levied in lieu of real property taxes against the Building or upon the Landlord in respect of the Building.

b. To the lawful taxing authorities, or to the Landlord, as it may direct, as and when the same become due and payable, all taxes, rates, use fees, duties, assessments and other charges that are levied, rated, charged or assessed against or in respect of all improvements, equipment and facilities of the Tenant on or in default by the Tenant and in respect of any business carried on in the Premises or in respect of the use or occupancy of the Premises by the Tenant and every subtenant, licensee, concessionaire or other person doing business on or from the Premises or occupying any portion of the Premises.

19. The Tenant will deliver promptly to the Landlord a copy of any separate tax bills or separate assessment notices for the Premises and receipts evidencing the payment of all amounts payable by the Tenant directly to any taxing authority and will furnish such information in connection therewith as the Landlord may from time to time require.

20. The Tenant will pay to the Landlord, forthwith upon demand, the following amounts:

a. If the Tenant or any person occupying the Premises or any part of the Premises will make an election in respect to the Premises, any additional amount payable in respect of the Premises or the Building as a result of such election, as reasonably determined by the Landlord.

b. An amount equal to any increase in the Operating Costs if such increase is directly or indirectly attributable to any installation in or upon the Premises or any activity or conduct on the Premises.

c. In such manner as the Landlord will from time to time direct, the cost of supplying all water, fuel, electricity, telephone and any other utilities used or consumed upon or serving the Premises. If the Tenant is billed for the consumption or use of such utilities directly by the appropriate utility authority, the Tenant will pay any such billings promptly when due and payable. If separate check

meters are not installed in respect of utilities consumption in, upon or serving the Premises or if the Tenant is not billed for the consumption of such utilities directly by the competent authority, the Landlord will allocate to the Tenant, on a reasonable basis, a share of the total costs of all utilities consumed within the Building.

21. All amounts payable by the Tenant relating to the Operating Costs will be deemed to be rent and receivable and collectable as such notwithstanding the expiration or sooner termination of this Lease and all remedies of the Landlord for nonpayment of rent will be applicable thereto.

22. For any rent review negotiation, the basic rent will be calculated as being the higher of the Base Rent payable immediately before the date of review and the Open Market Rent on the date of review.

**Landlord's Estimate**

23. The Landlord may, in respect of all taxes and Operating Costs and any other items of Additional Rent referred to in this Lease compute bona fide estimates of the amounts which are anticipated to accrue in the next following lease year, calendar year or fiscal year, or portion of such year, as the Landlord may determine is most appropriate for each and of all items of Additional Rent, and the Landlord may provide the Tenant with written notice and a reasonable breakdown of the amount of any such estimate, and the Tenant, following receipt of such written notice of the estimated amount and breakdown will pay to the Landlord such amount, in equal consecutive monthly installments throughout the application period with the monthly installments of Base Rent. With respect to any item of Additional rent which the Landlord has not elected to estimate from time to time, the Tenant will pay to the Landlord the amount of such item of Additional Rent, determined under the applicable provisions of this Lease, immediately upon receipt of an invoice setting out such items of Additional Rent. Within one hundred and twenty (120) days of the conclusion of each year of the term or a portion of a year, as the case may be, calendar year or fiscal year, or portion of such year, as the case may be, for which the Landlord has estimated any item of Additional Rent, the Landlord will compute the actual amount of such item of Additional Rent, and make available to the Tenant for examination a statement providing the amount of such item of Additional Rent and the calculation of the Tenant's share of that Additional Rent for such year or portion of such year. If the actual amount of such items of Additional Rent, as set out in the any such statement, exceeds the aggregate amount of the installments paid by the Tenant in respect of such item, the Tenant will pay to the Landlord the amount of excess within fifteen (15) days of receipt of any such statement. If the contrary is the case, any such statement will be accompanied by a refund to the Tenant of any such overpayment without interest, provided that the Landlord may first deduct from such refund any rent which is then in arrears.

**Use and Occupation**

24. The Tenant will use and occupy the Premises only for the Permitted Use and for no other purpose whatsoever. The Tenant will carry on business under the name of FSLCAS and will not change such

name without the prior written consent of the Landlord, such consent not to be unreasonably withheld. The Tenant will open the whole of the Premises for business to the public fully fixtured, stocked and staffed on the date of commencement of the term and throughout the term, will continuously occupy and utilize the entire Premises in the active conduct of its business in a reputable manner on such days and during such hours of business as may be determined from time to time by the Landlord.

25. The Tenant covenants that the Tenant will carry on and conduct its business from time to time carried on upon the Premises in such manner as to comply with all statutes, bylaws, rules and regulations of any federal, provincial, municipal or other competent authority and will not do anything on or in the Premises in contravention of any of them.

### Security Deposit

26. On execution of this Lease, The Tenant will pay the Landlord a security deposit equal to the amount of $4,000.00 (the "Security Deposit") to be held by the Landlord without interest. The Landlord will return the Security Deposit to the Tenant at the end of this tenancy, less such deductions as provided in this Lease but no deduction will be made for damage due to reasonable wear and tear.

27. The Tenant may not use the Security Deposit as payment for the Rent.

### Quiet Enjoyment

28. The Landlord covenants that on paying the Rent and performing the covenants contained in this Lease, the Tenant will peacefully and quietly have, hold, and enjoy the Premises for the agreed term.

### Default

29. If the Tenant is in default in the payment of any money, whether hereby expressly reserved or deemed as rent, or any part of the rent, and such default continues following any specific due date on which the Tenant is to make such payment, or in the absence of such specific due date, for the 5 days following written notice by the Landlord requiring the Tenant to pay the same then, at the option of the Landlord, this Lease may be terminated upon 5 days notice and the term will then immediately become forfeited and void, and the Landlord may without further notice or any form of legal process immediately reenter the Premises or any part of the Premises and in the name of the whole repossess and enjoy the same as of its former state anything contained in this Lease or in any statute or law to the contrary notwithstanding.

30. Unless otherwise provided for in this Lease, if the Tenant does not observe, perform and keep each and every of the non-monetary covenants, agreements, stipulations, obligations, conditions and other provisions of this Lease to be observed, performed and kept by the Tenant and persists in such default, after 10 days following written notice from the Landlord requiring that the Tenant remedy, correct or comply or, in the case of such default which would reasonably require more than 10 days to rectify, unless the Tenant will commence rectification within the said 10 days notice period and thereafter

# Exhibit C

# Commercial Tenant
# Repair Items

First Start Child Care Academy South

5700 S. Ashland Ave

Chicago, IL 60636

List of Repair / Facilities Safety Hazards Identified and action plan

List Update: 3/30/17

| Room / Area Location | Repair / Issue Identified | Target Date for Rectification | Completion Date | Supervisors Initials |
|---|---|---|---|---|
| Kitchen | Grease trap continues to overflow during sink drainage | | | |
| Action Plan: | | | | |
| Back Exit & Bumblebees Classroom | EXIT indicator needs battery | | | |
| Action Plan: | | | | |
| Boys Bathroom | Fan needs service (blowing low) | | | |
| Action Plan: | | | | |
| Utility room | 10ft of flexible duct work / loft material to girls' bathroom needs to be removed and replaced with rigid piping. | | | |
| Action Plan: | | | | |
| General Exhaust (located outside office) | Gen. Exhaust appears to be positioned inside the office instead of outside the office. Should be square footage of daycare times .75 to get size of CFM fan needed | | | |
| Action Plan: | | | | |
| Furnace to Outdoors | Requires outside air to both furnaces | | | |
| Action Plan: | | | | |
| Superstar Classroom | Leakage above center 4 windows, where wall appears to be collapsing toward center. | | | |
| Action Plan: | | | | |

# Exhibit D

# Property Taxes

Property Characteristics for PIN:

## 20-18-223-024-0000



### PROPERTY ADDRESS

5702 S ASHLAND AVE
CHICAGO
60636
Township: LAKE

### MAILING ADDRESS

SRDJAN CEMERIKIC
2544 OAK PARK AV
BERWYN, IL 60402

### INFO FOR TAX YEAR 2016

Estimated Property Value:

| | |
|---|---|
| Total Assessed Value: | 38,507 |
| Lot Size (SqFt): | 5,550 |
| Building (SqFt): | |
| Property Class: | 3-18 |
| Tax Rate (2015): | 6.867 |
| Tax Code (2016): | 72163 |

## TAX BILLED AMOUNTS & TAX HISTORY

2016: $3,880.94*  Pay Online: $4,055.57 due
2015: $7,056.25  Paid in Full
2014: $7,144.52  Payment History
2013: $7,003.41  Payment History
2012: $6,909.92  Payment History
*=(1st Install Only)

### EXEMPTIONS

2016: Not Available
2015: 0 Exemptions Received
2014: 0 Exemptions Received
2013: 0 Exemptions Received
2012: 0 Exemptions Received

### APPEALS

2016: Not Available
2015: Appeal Filed
2014: Not Accepting Appeals
2013: Appeal Filed
2012: Appeal Filed

## REFUNDS AVAILABLE

No Refund Available

### TAX SALE (DELINQUENCIES)

2016: Tax Sale Has Not Occurred
2015: Tax Sale Has Not Occurred
2014: Taxes Sold and Redeemed
2013: No Tax Sale
2012: Taxes Sold and Redeemed

### DOCUMENTS, DEEDS & LIENS

1523719190 - RELEASE - 08/25/2015
1436029004 - QUIT CLAIM DEED - 12/26/2014
1420601043 - COURT DOC - 07/25/2014
1127840139 - COURT DOC - 10/05/2011
0921226262 - ASSIGNMENT - 07/31/2009

*All years referenced herein denote the applicable tax year (i.e., the year for which taxes were assessed). Parcels may from time to time be consolidated or subdivided. If information regarding a particular PIN appears to be missing for one or more tax years, it is possible that the PIN has changed due to a consolidation or subdivision. Users may contact the Cook County Clerk's Office for information regarding PIN lineage. Users should also note that the information displayed on this site does not include special assessments (which are billed and collected by municipalities) or omitted taxes (which are assessed on an ad hoc basis by the Cook County Assessor's Office). Please direct inquiries regarding the status of special assessments to your municipality. Questions regarding omitted taxes should be directed to the Assessor's Office.*

**Note: This printout cannot be used as a tax bill.**

# Exhibit E

# City of Chicago Building Violations

 City of Chicago

# Department of Buildings

## Building Violations

### Disclaimer - Please read

The information presented on this website is informational only and does not necessarily reflect the current condition of the building or property. The fact that a permit was issued does not confirm that work was performed, or that work was performed in accordance with that permit and the requirements of the Municipal Code.

Information on inspections and violations reflect conditions found by the inspector at the time of the inspection and not necessarily the current status of those violations or the current condition of the property. The absence of violations on this website does not mean a building or property is in compliance with the requirements of the Municipal Code.

The Department of Buildings may refer certain violations to the City's Department of Law for enforcement proceedings in the Department of Administrative Hearings or the Circuit Court of Cook County. Please contact the Department of Administrative Hearings or the Clerk of the Circuit Court, respectively to obtain records of these proceedings. You may also visit the City's online portal of Building-Related Court Actions.

INPUT ADDRESS
5700 S ASHLAND AVE

RANGE ADDRESS
5700-5702 S ASHLAND AVE CHICAGO IL 60636

### BUILDING ATTRIBUTES

| BLDG ID | STORIES | BASEMENT | LENGTH | WIDTH | HEIGHT | FLR AREA | CONSTR TYPE | PORCH | LOT WIDTH | LOT LENGTH | DU |
|---------|---------|----------|--------|-------|--------|----------|-------------|-------|-----------|------------|-----|
| 748783E | 3 | Y | 80 | 50 | 0 | 4000 | 3B | | 50 | 125 | 8 |

### PERMITS

| PERMIT # | DATE ISSUED | DESCRIPTION OF WORK |
|----------|-------------|---------------------|
| 100484771 | 04/06/2013 | RECONECT EMERGENCU LIGHTS ON LIGHTING CIRCUIT |
| 100333215 | 03/09/2010 | REVISION TO PERMIT # 100272161 TO CHANGE PLUMBING CONTRACTOR |
| 100272161 | 04/27/2009 | INTERIOR BUILDOUT OF AN EXISTING COMMERCIAL SPACE INTO A CHILD DAYCARE AS PER PLANS TO AN EXISTING 3 STORY MASONRY BUILDING W/ 8 DU. |
| 100224875 | 04/01/2008 | LOW VOLTAGE ELECTRIC - |
| 100175504 | 05/21/2007 | 800A SERVICE UPGRADE 8-D U.,2-COMMERCIAL SPACES PLAN# 21321 |
| 100174486 | 04/25/2007 | PROVIDE 5 NEW CIRCUITS IN SOUTH STORE 1ST FLOOR |
| 100174484 | 04/25/2007 | PROVIDE 5 NEW CIRCUITS IN NORTH STORE |
| 100171972 | 04/12/2007 | Erect a new steel porch construction at rear to replace existing as per plans |
| 100046842 | 05/17/2005 | REPLACE DRYWALL 5/8' GYP BD. WD. FLOORS DOORS, CABINETS, WINDOWS AND REPAIR RUBBER ROOF AND WORK SAME AS EXISTING |
| B20109000 | 04/24/2001 | REPLACE APPROX 15 SHEETS 1/2' UL GYP BD, REPLACE DAMAGED CEILING TILE, VINYL TILE. ALL WORK SAME AS EXISTING. NO ELECTRIC. |
| EL0710887 | 08/27/1997 | ELECTRICAL MAINT 07-97 |
| B97033731 | 05/22/1997 | INSTALLATION OF OTIS (ANGLE-TYPE) DOOR RESTRICTORS ON *3 ELEVATORS |
| EL7493409 | 08/25/1987 | INSTALL ELECT'L CONDUIT & CONTROLS W/O P |
| EL5801714 | 07/02/1982 | BUD DIGITAL CLOCK BUD BOWTIE NEON |

### CASE ACTIVITY

| CASE NUMBER | CASE TYPE |
|-------------|-----------|
| 10SO251006 | ADMINISTRATIVE HEARING |
| 09SO198689 | ADMINISTRATIVE HEARING |
| 08TO151233 | ADMINISTRATIVE HEARING |
| 07TO101400 | ADMINISTRATIVE HEARING |

### INSPECTIONS

| INSP # | INSPECTION DATE | STATUS | TYPE DESCRIPTION |
|--------|-----------------|--------|------------------|
| 897401 | 05/02/2005 | CLOSED | CONSERVATION ANNUAL |
| 1596055 | 11/06/2006 | FAILED | NEW CONSTRUCTION COMPLAINT |
| 1875303 | 04/20/2007 | CLOSED | CONSTRUCTION EQUIPMENT PERMIT |
| 2026891 | 04/30/2007 | PASSED | BLDG_PERM IRON PERMIT INSP |
| 1875302 | 11/28/2007 | PASSED | DOB NEW CONSTRUCTION INSP |
| 2157357 | 01/09/2008 | FAILED | NEW CONSTRUCTION COMPLAINT |
| 1409204 | 08/11/2008 | FAILED | CONSERVATION ANNUAL |
| 2328373 | 12/03/2008 | FAILED | CONSERVATION ANNUAL |
| 2603601 | 04/07/2009 | PASSED | REFRIGERATION ANNUAL |
| 1598621 | 07/27/2009 | CLOSED | DOB NEW CONSTRUCTION INSP |

Receiver's First Report - 16-CV-09838
5700-02 S. Ashland Ave., Chicago
Page 42 of 56

2/28/2017

Building Violations

| INSP # | INSPECTION DATE | STATUS | TYPE DESCRIPTION |
|---|---|---|---|
| 1896455 | 07/27/2009 | CLOSED | ELECTRICAL PERMIT INSPECTION |
| 1883078 | 07/27/2009 | CLOSED | ELECTRICAL PERMIT INSPECTION |
| 1862970 | 07/27/2009 | CLOSED | ELECTRICAL PERMIT INSPECTION |
| 1596061 | 07/27/2009 | CLOSED | NEW CONSTRUCTION COMPLAINT |
| 2578443 | 11/02/2009 | FAILED | CONSERVATION ANNUAL |
| 2831639 | 11/16/2009 | FAILED | DOB PLUMBING INSPECTION |
| 2831645 | 03/02/2010 | FAILED | DOB PLUMBING INSPECTION |
| 9913070 | 04/05/2010 | PASSED | DOB PLUMBING INSPECTION |
| 2723338 | 04/05/2010 | PARTIAL PASSED | DOB VENT/FURNACE INSPECTION |
| 2723336 | 04/13/2010 | PARTIAL PASSED | ELECTRICAL PERMIT INSPECTION |
| 9927192 | 04/27/2010 | PARTIAL PASSED | DOB VENT/FURNACE INSPECTION |
| 9916430 | 04/27/2010 | PARTIAL PASSED | DOB VENT/FURNACE INSPECTION |
| 8923161 | 04/27/2010 | PARTIAL PASSED | ELECTRICAL PERMIT INSPECTION |
| 2256310 | 04/27/2010 | PASSED | ELECTRICAL PERMIT INSPECTION |
| 2821875 | 06/09/2010 | FAILED | CONSERVATION ANNUAL |
| 2723340 | 06/11/2010 | PASSED | DOB NEW CONSTRUCTION INSP |
| 9927189 | 06/16/2010 | PARTIAL PASSED | DOB VENT/FURNACE INSPECTION |
| 9954392 | 06/16/2010 | FAILED | DOB PLUMBING INSPECTION |
| 9939663 | 06/17/2010 | PARTIAL PASSED | ELECTRICAL PERMIT INSPECTION |
| 9954396 | 07/08/2010 | FAILED | DOB PLUMBING INSPECTION |
| 9964497 | 07/08/2010 | PASSED | ELECTRICAL PERMIT INSPECTION |
| 9953849 | 07/09/2010 | PASSED | DOB VENT/FURNACE INSPECTION |
| 9896209 | 07/19/2010 | CLOSED | DOB PLUMBING INSPECTION |
| 10270429 | 03/28/2014 | PASSED | REFRIGERATION ANNUAL |
| 10416589 | 03/28/2014 | PASSED | DOB REFRIGERATION INSPECTION |
| 9950943 | 11/14/2016 | FAILED | CONSERVATION ANNUAL |

VIOLATIONS

CONSERVATION ANNUAL # 897401

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN192019 | Notify Building Dept of proposed use of vacant and unoccupied space. | vacant & secure |
| CN138056 | Remove accumulation of refuse and debris and keep premises clean. (13-196-580, 13-196-630) | all elevations debris |
| CN134016 | Rid premises of rodents and seal rodent holes. (13-196-530 D, 13-196-540 A, 13-196-630 C) | rats at grade |
| CN134026 | Install rat stopping around exterior walls. (7-28-660) | rat holes at grade |
| CN061014 | Failed to maintain the exterior walls of a building or structure free from holes, breaks, loose or rotting boards or timbers and any other conditions which might admit rain or dampness to the walls. (13-196-530(b), 13-196-641) | south east portion of exterior facade bricks pulling away from bldg-west elevation spalling bricks and concrete |

CONSERVATION ANNUAL # 1409204

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN134016 | Rid premises of rodents and seal rodent holes. (13-196-530 D, 13-196-540 A, 13-196-630 C) | rats at grade |
| CN134026 | Install rat stopping around exterior walls. (7-28-660) | rat holes at grade |
| CN061014 | Failed to maintain the exterior walls of a building or structure free from holes, breaks, loose or rotting boards or timbers and any other conditions which might admit rain or dampness to the walls. (13-196-530(b), 13-196-641) | south east portion of exterior facade bricks pulling away from bldg-west elevation spalling bricks and concrete |
| CN076044 | Failed to maintain roof downspouts in good repair and working condition. (13-196-590, 13-196-630(b), 13-196-641, 18-29-1101, 18-29-1105, 18-29-1106) | REAR MISSING SECTION OF DOWN SPOUT |
| CN196029 | Post name, address, and telephone of owner, owner's agent for managing, controlling or collecting rents, and any other person managing or controlling building conspicuously where accessible or visible to public way. (13-12-030) | NO MANAGEMENT POSTED |
| NC2011 | Performed or allowed work to be performed without submitting plans prepared, signed and sealed by a licensed architect or registered structural engineer for approval and without obtaining a permit to perform the work. (13-32-010, 13-32-040, 13-40-020, 13-12-050) | PLANS AND PERMIT REQUIRED FOR STEEL PORCH |
| CN190019 | Arrange for inspection of premises. (13-12-100) | NO ENTRY FOR ANNUAL INSPECTION |

CONSERVATION ANNUAL # 2328373

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN190019 | Arrange for inspection of premises. (13-12-100) | NO ENTRY FOR ANNUAL INSPECTION |

CONSERVATION ANNUAL # 2578443

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| NC2011 | Performed or allowed work to be performed without submitting plans prepared, signed and sealed by a licensed architect or registered structural engineer for approval and without obtaining a permit to perform the work. (13-32-010, 13-32-040, 13-40-020, 13-12-050) | PLANS AND PERMIT REQUIRED FOR STEEL PORCH |
| CN190019 | Arrange for inspection of premises. (13-12-100) | Unable to gain entry to most apartments and store front to verify occupancy,detectors and overall condition for 2009 annual inspection. |
| CN061014 | Failed to maintain the exterior walls of a building or structure free from holes, breaks, loose or rotting boards or timbers and any other conditions which might admit rain or dampness to the walls. (13-196-530(b), 13-196-641) | Masonary wall at top loose and washed out morter joints spalling bricks. |
| CN104015 | Replace broken, missing or defective window panes. (13-196-550 A) | BROEKN WINDOW 1ST LEVEL GRADE FRONT |
| CN031023 | Failed to maintain properly charged fire extinguisher and to attach tag which clearly indicates recharge date and | Fire extinguishers outdated. |

Receiver's First Report - 16-CV-09838
5700-02 S. Ashland Ave., Chicago
Page 43 of 56

Building Violations

| | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| | signature of the person who performed the recharge. (15-16-680) | |
| CN074014 | Failed to maintain exterior service walks, passage and areaways in clean, sanitary and safe condition. (13-196-630, 13-196-641) | Various locations broken and cracked sidewalks. |
| CN107035 | Failed to maintain all ext signs illuminated when building is occupied and otherwise maintain ext signs in good condition. (13-196-090, 13-160-700 thru 13-160-770) | Ext sign not illuminated. |
| CN138106 | Remove and stop nuisance. (7-28-060) | High weeds. |
| CN198019 | File building registration statement with Buildng Dept. (13-10-030, 13-10-040) | Building not registered from 2005 thru 2009. |
| NC2021 | Performed or allowed work to be performed erecting, enlarging, altering, repairing, removing or demolishing a building or part of a building without a permit. (13-12-050, 13-32-010, 13-32-130) | Wrought iron fence no permit. |

DOB PLUMBING INSPECTION # 2831639

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| PL151137 | | |

DOB PLUMBING INSPECTION # 2831645

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| PL151137 | | |
| PL151137 | | |

CONSERVATION ANNUAL # 2621875

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| PL237058 | Provide discharge pipe from water heater and hot water storage tank relief valve. (18-29-504.7.1) | Rear mechanical room , 1st floor at northwest - Water heater missing overflow pipe. |
| CN078014 | Failed to provide and maintain adequate illumination of ext areas. (13-160-660, 13-160-670, 13-196-080) | Rear porch- No exterior lighting . Requires electrical permit. |
| CN106015 | Failed to maintain interior stairway system in safe condition and sound repair. (13-196-570) | Basement interior stairs - Stair system weak , no stringer support- missing guardrails and handrails. |
| CN196029 | Post name, address, and telephone of owner, owner's agent for managing, controlling or collecting rents, and any other person managing or controlling building conspicuously where accessible or visible to public way. (13-12-030) | Building - Owners I.D. sign - Not complete ,missing street address. |
| PL169017 | Remove sewage and stagnant water from basement and correct cause. (13-196-580 A, 7-28-060) | Basement - Floor damp with standing water. |
| CN190019 | Arrange for inspection of premises. (13-12-100) | First floor Daycare- No response , unverified detectors, occupancy and conditions. |
| CN198019 | File building registration statement with Buildng Dept. (13-10-030, 13-10-040) | Building - Not registered 2005 ,2006, 2007 , 2008 , 2009 and 2010. |
| NC2021 | Performed or allowed work to be performed erecting, enlarging, altering, repairing, removing or demolishing a building or part of a building without a permit. (13-12-050, 13-32-010, 13-32-130) | Rear parking Lot - Permit required for six foot hight wrought iron fence with two 10 foot high rolling driveway gates. |

DOB PLUMBING INSPECTION # 9954392

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| PL151137 | | |

DOB PLUMBING INSPECTION # 9954395

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| PL151137 | | |

DOB PLUMBING INSPECTION # 9896209

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| PL151137 | | |

CONSERVATION ANNUAL # 9950943

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN062024 | Failed to maintain parapet wall in good repair and free from cracks and defects. (13-196-530 and 13-196-641) | North elevation parapet wall has spalling and loose cement parge. |
| CN107015 | Failed to provide and maintain adequate illumination for public hall and stairwell. (13-196-080, 13-196-450, 13-160-660, 13-160-670) | 1st floor day care center (2) emergency lights out of service. |
| CN073014 | Failed to maintain exterior door in sound condition and repair. (13-196-550(d) and (e), 13-196-641) | West elevation 2nd floor exit door broken hinges. |
| CN107035 | Failed to maintain all ext signs illuminated when building is occupied and otherwise maintain ext signs in good condition. (13-196-090, 13-160-700 thru 13-160-770) | 2nd floor ext signs out of service. |
| CN197079 | Repair or replace defective or out of service smoke detectors and operate continuously. (13-196-130, 13-196-140) | 2nd floor hallway smoke detector beeping. |
| CN133016 | Repair or replace defective and dangerous carpeting. (13-196-630, 13-196-540) | Carpeting in stairwells from 1st thru 3rd floor very dirty. |
| CN190019 | Arrange for inspection of premises. (13-12-100) | No response/entry at time of inspection. Gained entry to daY care center and some units but not all to verify Occupancy,Detectors and overall condition for 2016 annual inspection. |
| NC2021 | Performed or allowed work to be performed erecting, enlarging, altering, repairing, removing or demolishing a building or part of a building without a permit. (13-12-050, 13-32-010, 13-32-130) | Rear parking Lot - Permit required for six foot hight wrought iron fence with two 10 foot high rolling driveway gates. |
| CN078014 | Failed to provide and maintain adequate illumination of ext areas. (13-160-660, 13-160-670, 13-196-080) | Rear porch- No exterior lighting . Requires electrical permit. |
| CN106015 | Failed to maintain interior stairway system in safe condition and sound repair. (13-196-570) | Basement interior stairs - Stair system weak , no stringer support- missing guardrails and handrails. |
| CN196029 | Post name, address, and telephone of owner, owner's agent for managing, controlling or collecting rents, and any other person managing or controlling building | Building - Owners I.D. sign - Not complete ,missing street address. |

| | conspicuously where accessible or visible to public way. (13-12-030) | |
|---|---|---|
| PL169017 | Remove sewage and stagnant water from basement and correct cause. (13-196-580 A, 7-28-060) | Basement - Floor damp with standing water. |
| PL237058 | Provide discharge pipe from water heater and hot water storage tank relief valve. (18-29-504.7.1) | Rear mechanical room ,1st floor at northwest - Water heater missing overflow pipe. |

NEW CONSTRUCTION COMPLAINT # 1596061

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN190019 | Arrange for inspection of premises. (13-12-100) | Interior no entry |
| CN199029 | | Fine for work done contrary to permit. Sec. 13-12-080 13-32-035 |
| NC2011 | Performed or allowed work to be performed without submitting plans prepared, signed and sealed by a licensed architect or registered structural engineer for approval and without obtaining a permit to perform the work. (13-32-010, 13-32-040, 13-40-020, 13-12-050) | Built new rear porch in rear. Bricked up windows. Bricked up area of ventilation on south elevation. |
| NC2061 | Stop and remove work contrary to permit. (13-32-120, 13-32-290) | Interior and exterior alterations. Contrary to permit |

NEW CONSTRUCTION COMPLAINT # 2157357

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN199029 | | Stop work until permit is obtained sec 13-12-080, 13-32-035 |
| NC2011 | Performed or allowed work to be performed without submitting plans prepared, signed and sealed by a licensed architect or registered structural engineer for approval and without obtaining a permit to perform the work. (13-32-010, 13-32-040, 13-40-020, 13-12-050) | Built new partitions at first flr to create " Day Care Center" |

NEW CONSTRUCTION COMPLAINT # 1596555

| VIOLATIONS | BUILDING CODE CITATION | VIOLATION DETAILS |
|---|---|---|
| CN190019 | Arrange for inspection of premises. (13-12-100) | Interior no entry |
| CN199029 | | Fine for work done contrary to permit. Sec. 13-12-080 13-32-035 |
| NC2011 | Performed or allowed work to be performed without submitting plans prepared, signed and sealed by a licensed architect or registered structural engineer for approval and without obtaining a permit to perform the work. (13-32-010, 13-32-040, 13-40-020, 13-12-050) | Built new rear porch in rear. Bricked up windows. Bricked up area of ventilation on south elevation. |
| NC2061 | Stop and remove work contrary to permit. (13-32-120, 13-32-290) | Interior and exterior alterations. Contrary to permit |

# Exhibit F

# Operating Account Details

Accrual Basis

# 5700-02 S. Ashland c/o A.R.E. Partners
## Balance Sheet
### As of April 30, 2017

|  | Apr 30, 17 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 5700 S Ashland | 16,564.77 |
| **Total Checking/Savings** | 16,564.77 |
| **Accounts Receivable** | |
| Accounts Receivable | 3,275.00 |
| **Total Accounts Receivable** | 3,275.00 |
| **Other Current Assets** | |
| Undeposited Funds | 5,375.00 |
| **Total Other Current Assets** | 5,375.00 |
| **Total Current Assets** | 25,214.77 |
| **TOTAL ASSETS** | **25,214.77** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable | 655.00 |
| **Total Accounts Payable** | 655.00 |
| **Total Current Liabilities** | 655.00 |
| **Total Liabilities** | 655.00 |
| **Equity** | |
| Net Income | 24,559.77 |
| **Total Equity** | 24,559.77 |
| **TOTAL LIABILITIES & EQUITY** | **25,214.77** |

**5700-02 S. Ashland c/o A.R.E. Partners**
**Customer Balance Detail**
As of April 30, 2017

| Type | Date | Num | Account | Amount | Balance |
|---|---|---|---|---|---|
| **5700-02 S. Ashland Ave** | | | | | |
| **Unit C** | | | | | |
| **First Start Academy South** | | | | | |
| Invoice | 01/25/2017 | 1 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 10 | Accounts Receivable | 4,200.00 | 0.00 |
| Invoice | 03/01/2017 | 21 | Accounts Receivable | 4,200.00 | 0.00 |
| Payment | 03/03/2017 | 0712 | Accounts Receivable | -4,200.00 | 4,200.00 |
| Payment | 03/31/2017 | 0717 | Accounts Receivable | -4,200.00 | 8,400.00 |
| Invoice | 04/01/2017 | 30 | Accounts Receivable | -4,200.00 | 4,200.00 |
| Payment | 04/28/2017 | 0729 | Accounts Receivable | -4,200.00 | 0.00 |
| **Total First Start Academy South** | | | | 0.00 | 0.00 |
| **Total Unit C** | | | | 0.00 | 0.00 |
| **Unit 1-1** | | | | | |
| **Rachel Dixon** | | | | | |
| Invoice | 01/25/2017 | 2 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 11 | Accounts Receivable | 900.00 | 0.00 |
| Payment | 02/21/2017 | 90724... | Accounts Receivable | -900.00 | 900.00 |
| Invoice | 03/01/2017 | 24 | Accounts Receivable | 900.00 | 0.00 |
| Payment | 03/21/2017 | 90724... | Accounts Receivable | -900.00 | 900.00 |
| Invoice | 04/01/2017 | 33 | Accounts Receivable | 900.00 | 0.00 |
| Payment | 04/06/2017 | 90724... | Accounts Receivable | -900.00 | 900.00 |
| **Total Rachel Dixon** | | | | 0.00 | 0.00 |
| **Total Unit 1-1** | | | | 0.00 | 0.00 |
| **Unit 1-2** | | | | | |
| **Mary Williams** | | | | | |
| Invoice | 01/25/2017 | 3 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 12 | Accounts Receivable | 850.00 | 0.00 |
| Invoice | 03/01/2017 | 23 | Accounts Receivable | 850.00 | 850.00 |
| Invoice | 03/03/2017 | 90724... | Accounts Receivable | -850.00 | 1,700.00 |
| Payment | 03/08/2017 | 90724... | Accounts Receivable | 450.00 | 850.00 |
| Invoice | 04/01/2017 | 32 | Accounts Receivable | 850.00 | 450.00 |
| Payment | 04/03/2017 | 90724... | Accounts Receivable | -950.00 | 1,300.00 |
| Payment | 04/28/2017 | 90724... | Accounts Receivable | 350.00 | 350.00 |
| | | | | -325.00 | 25.00 |
| **Total Mary Williams** | | | | 25.00 | 25.00 |
| **Total Unit 1-2** | | | | 25.00 | 25.00 |
| **Unit 1-3** | | | | | |
| **Jasmine Love** | | | | | |
| Invoice | 01/25/2017 | 4 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 13 | Accounts Receivable | 750.00 | 0.00 |
| Invoice | 03/01/2017 | 22 | Accounts Receivable | 750.00 | 750.00 |
| Payment | 03/31/2017 | 94106... | Accounts Receivable | -750.00 | 1,500.00 |
| | | | | | 750.00 |

## 5700-02 S. Ashland c/o A.R.E. Partners
## Customer Balance Detail
### As of April 30, 2017

| Type | Date | Num | Account | Amount | Balance |
|------|------|-----|---------|--------|---------|
| Payment | 03/31/2017 | 94106... | Accounts Receivable | -750.00 | 0.00 |
| Invoice | 04/01/2017 | 31 | Accounts Receivable | 750.00 | 750.00 |
| Payment | 04/06/2017 | 268574 | Accounts Receivable | -750.00 | 0.00 |
| Total Jasmine Love | | | | 0.00 | 0.00 |
| **Total Unit 1-3** | | | | | 0.00 |
| **Unit 1-4** | | | | | |
| **Shiedah Williams** | | | | | |
| Invoice | 01/25/2017 | 5 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 14 | Accounts Receivable | 750.00 | 750.00 |
| Invoice | 03/01/2017 | 26 | Accounts Receivable | 750.00 | 1,500.00 |
| Invoice | 03/08/2017 | 90724... | Accounts Receivable | -750.00 | 750.00 |
| Payment | 03/13/2017 | 90724... | Accounts Receivable | -750.00 | 0.00 |
| Invoice | 04/01/2017 | 35 | Accounts Receivable | 750.00 | 750.00 |
| Total Shiedah Williams | | | | 750.00 | 750.00 |
| **Total Unit 1-4** | | | | 750.00 | 750.00 |
| **Unit 2-1** | | | | | |
| **Tasha Profit (Flowers)** | | | | | |
| Invoice | 01/25/2017 | 6 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 15 | Accounts Receivable | 850.00 | 850.00 |
| Payment | 02/27/2017 | 267450 | Accounts Receivable | -450.00 | 400.00 |
| Invoice | 03/01/2017 | 27 | Accounts Receivable | 850.00 | 1,250.00 |
| Payment | 03/13/2017 | 90724... | Accounts Receivable | -400.00 | 850.00 |
| Payment | 03/31/2017 | 90724... | Accounts Receivable | -425.00 | 425.00 |
| Invoice | 04/01/2017 | 36 | Accounts Receivable | 850.00 | 1,275.00 |
| Payment | 04/11/2017 | 90724... | Accounts Receivable | -425.00 | 850.00 |
| Payment | 04/30/2017 | 90724... | Accounts Receivable | -850.00 | 0.00 |
| Total Tasha Profit (Flowers) | | | | 0.00 | 0.00 |
| **Total Unit 2-1** | | | | 0.00 | 0.00 |
| **Unit 2-2** | | | | | |
| **Claudette Teaguee** | | | | | |
| Invoice | 01/25/2017 | 7 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 16 | Accounts Receivable | 850.00 | 850.00 |
| Payment | 02/27/2017 | 267449 | Accounts Receivable | -850.00 | 0.00 |
| Invoice | 03/01/2017 | 20 | Accounts Receivable | 850.00 | 850.00 |
| Invoice | 04/01/2017 | 29 | Accounts Receivable | 850.00 | 1,700.00 |
| Payment | 04/03/2017 | 268408 | Accounts Receivable | -850.00 | 850.00 |
| Total Claudette Teaguee | | | | 850.00 | 850.00 |
| **Total Unit 2-2** | | | | 850.00 | 850.00 |
| **Unit 2-3 - vacant** | | | | | |

# 5700-02 S. Ashland c/o A.R.E. Partners
## Customer Balance Detail
### As of April 30, 2017

| Type | Date | Num | Account | Amount | Balance |
|---|---|---|---|---|---|
| **Sharlon Moore** | | | | | |
| Invoice | 01/25/2017 | 8 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 17 | Accounts Receivable | 750.00 | 0.00 |
| Invoice | 03/01/2017 | 25 | Accounts Receivable | 750.00 | 750.00 |
| Invoice | 04/01/2017 | 34 | Accounts Receivable | 0.00 | 1,500.00 |
| | | | | | 1,500.00 |
| Total Sharlon Moore | | | | 1,500.00 | 1,500.00 |
| | | | | | |
| Total Unit 2-3 - vacant | | | | 1,500.00 | 1,500.00 |
| | | | | | |
| **Unit 2-4** | | | | | |
| **Andrew Clark, Benjamin Clark, Moses Dixon** | | | | | |
| Invoice | 01/25/2017 | 9 | Accounts Receivable | 0.00 | 0.00 |
| Invoice | 02/01/2017 | 18 | Accounts Receivable | 800.00 | 0.00 |
| Payment | 02/21/2017 | | Accounts Receivable | -750.00 | 800.00 |
| Invoice | 03/01/2017 | 19 | Accounts Receivable | 800.00 | 50.00 |
| Invoice | 04/01/2017 | 28 | Accounts Receivable | 800.00 | 850.00 |
| Payment | 04/11/2017 | 30980... | Accounts Receivable | -750.00 | 1,650.00 |
| Payment | 04/11/2017 | 30980... | Accounts Receivable | -750.00 | 900.00 |
| | | | | | 150.00 |
| Total Andrew Clark, Benjamin Clark, Moses Dixon | | | | 150.00 | 150.00 |
| | | | | | |
| Total Unit 2-4 | | | | 150.00 | 150.00 |
| | | | | | |
| Total 5700-02 S. Ashland Ave | | | | 3,275.00 | 3,275.00 |
| | | | | | |
| **TOTAL** | | | | **3,275.00** | **3,275.00** |

Accrual Basis

## 5700-02 S. Ashland c/o A.R.E. Partners
## Expenses by Vendor Summary
### January 17 through April 30, 2017

| | Jan 17 - Apr 30, 17 |
|---|---|
| City of Chicago (water) | 1,019.52 |
| ComEd (electric) | 118.62 |
| Happie of USA (sec / day notices) | 130.00 |
| OSC-insurance | 1,769.40 |
| PSA Solutions Inc (maintenance) | 2,820.00 |
| Republic Services (scavenger) | 749.69 |
| Rose Pest Solutions (pest control) | 183.00 |
| **TOTAL** | **6,790.23** |

# Exhibit G

# Receiver Invoice and Time



**A.R.E. Partners Inc**
2923 N. Milwaukee Ave., #306
Chicago, IL 60618

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/12/2017 | 11014 |

Bill To

Cory Baldwin
PNC BANK
245 North Rose
Mailstop Z1-YC77-03-3
Kalamazoo, MI 49007

| Due Date | Project | Tracking Number |
|----------|---------|-----------------|
| 5/12/2017 | 5700-02 S. Ashland ... | |

| Serviced | Quantity | Item | Description | Amount |
|----------|----------|------|-------------|--------|
| 1/17/2017 | 14 | Property Mgmt | monthly management fee: pro-rated 1-17-17 thru 1-31-17 | 395.22 |
| 2/1/2017 | 1 | Property Mgmt | monthly management fee: february 2017 | 875.00 |
| 3/1/2017 | 1 | Property Mgmt | monthly management fee: march 2017 | 875.00 |
| 4/1/2017 | 1 | Property Mgmt | monthly management fee: april 2017 | 875.00 |
| 4/30/2017 | 12.5 | Field Support | Receivers field support see attached: 1/17/17 thru 4/30/17 | 812.50 |
| 4/30/2017 | 14 | Principal Support | Receivers Principal Support see attached: 1/17/17 thru 4/30/17 | 2,310.00 |
| 4/20/2017 | 1.5 | Principal Support | credit - no charge Receivers Principal Support see attached: 1/17/17 thru 4/30/17 | -247.50 |
| 4/17/2017 | 1 | Valuation | Brokers Price Opinion | 225.00 |
| | | Reimb Group | | |
| 4/25/2017 | | | reimbursable: duplicate keys for tenants: one key per unit -2-17 | 17.53 |
| 4/25/2017 | | | Postage: mail court order appointing receiver to service list 1-26-17 | 27.20 |
| | | | Total Reimbursable Expenses | 44.73 |

| | | |
|---|---|---|
| | **Total** | $6,164.95 |

| Phone # | Web Site | **Payments/Credits** | $0.00 |
|---------|----------|-----|-----|
| (312) 300-7237 | www.arepartners.com | **Balance Due** | $6,164.95 |

# A.R.E. PARTNERS INC.
## Time by Job Detail
### November 1, 2016 thru January 31, 2017

| Date | Duration | Notes |
|---|---|---|
| **A.R.E. Partners Inc:PNC:5700-02 S. Ashland – Chicago, IL** | | |
| **Asset Management:Asset Administration – N/C – included in monthly property management fee** | | |
| 04/12/2017 | 1.00 | SIR |
| 04/25/2017 | 1.00 | SIR |
| Total Asset M... | 2.00 | |
| | | |
| **Asset Management:Misc – N/C – included in monthly property management fee** | | |
| 04/10/2017 | 1.00 | AB/AD property visit- Unit inspection |
| 04/11/2017 | 1.00 | Onsite meeting with roofer |
| 04/14/2017 | 3.00 | backup support. Provide access/remove items for Ms. Moore, 2-3 |
| Total Asset M... | 5.00 | |
| | | |
| **Asset Management:Occupancy Related Activities – N/C – included in monthly property management fee** | | |
| 02/01/2017 | 0.15 | followup with tenants re: meeting, rents, updates |
| 02/01/2017 | 0.15 | prepare Feb rent due letters |
| 02/02/2017 | 1.00 | deliver rents are due letters to tenants |
| 02/07/2017 | 1.00 | deliver five day notices |
| 02/09/2017 | 0.15 | discussion w/unit 1-2 Ms. Williams re: case in Federal Court and her rent due |
| 02/17/2017 | 0.15 | call with tenant Rachel Dixon re: pickup up her rent |
| 02/22/2017 | 0.15 | calls w/tenants Mary Williams and Tasha Proffitt re: rents owend, 5 day notice and collecting payme |
| 02/24/2017 | 0.15 | call w/tenant Rachel Dixon re: replacing the carpet in her unit |
| 02/25/2017 | 1.30 | pick up rent from Tasha Profiti (2-1) and Claudette Teague (2-2), serve 5 day to unit 1-4 and unit 1 |
| 03/01/2017 | 1.00 | pick up rent from Mary Williams |
| 03/07/2017 | 0.45 | Fill out initial reports for tenants issues. Notify tenant about Thursday site visit to address buil |
| 03/07/2017 | 0.15 | call from tenant Sharlon Moore re: rents owed, locks, unit needs inspection; followup email with re |
| 03/07/2017 | 0.15 | call from tenant Jasmine Love re: rents owed; followup email with copy of court order and rents owe |
| 03/07/2017 | 0.15 | email to commercial unit re: access to basement on 3/9 to allow for inspection of doorbell and elec |
| 03/08/2017 | 0.15 | follow up calls with tenants re: access on 3/9 |
| 03/08/2017 | 1.00 | prepare 5 day notices |
| 03/09/2017 | 0.15 | call from Ms. Dixon unit 1-1 re: 5 day notice, pymt by the 20th; complaint re: other units and hall |
| 03/09/2017 | 1.00 | Visit site and each tenant. Serve 5 day notices, inspect basement for maintanence, revise list of |
| 03/17/2017 | 1.00 | Onsite to collect rent |
| 03/20/2017 | 0.15 | call with Ms. Love re: rent owed, collections |
| 03/20/2017 | 1.00 | Pick up rent from tenants |
| 03/23/2017 | 0.15 | call with Ms. Love re: rent owed, collections |
| 03/23/2017 | 0.15 | email to day care re: rent collection |
| 03/24/2017 | 1.00 | Pick up rent from tenants |
| 03/30/2017 | 0.15 | calls from tenants re: water leaks |
| 04/04/2017 | 0.15 | Call from 1-1 re: rents; call and email to 2-3 re: no rents received |
| 04/11/2017 | 0.15 | Communications with occupant re: additional unit access to remove items |
| 04/20/2017 | 1.00 | Trip to property to post unit inspection notices |
| 04/24/2017 | 0.15 | call with Rachel Dixon re: moving to vacant unit |
| Total Asset M... | 15.45 | |
| | | |
| **Field Support** | | |
| 01/25/2017 | 2.00 | On site visit with Receiver |
| 01/31/2017 | 0.45 | allow access to HVAC crew |
| 02/01/2017 | 0.15 | phone message to Defendant's attorney |

# A.R.E. PARTNERS INC.

## Time by Job Detail

### November 1, 2016 thru January 31, 2017

| Date | Duration | Notes |
|------|----------|-------|
| 02/06/2017 | 1.00 | Prepare 5 day notices for all tenants (9 units) |
| 03/02/2017 | 1.30 | Meet for lock changes and facilitate tenant getting keys. Inspect basement and previously unaccessab |
| 03/29/2017 | 1.00 | Onsite to provide access for appraiser James Scaise |
| 04/05/2017 | 1.00 | On-site meeting with maintenance to provide access |
| 04/10/2017 | 2.00 | On-site meeting to provide access for roofer as well as to inspect and take possession of Unit 2-3 |
| 04/14/2017 | 2.00 | On-site meeting with occupant re: to examine roof leaks and provide a plan fo |
| 04/20/2017 | 1.00 | Onsite to provide access for Ms. Moore 2-3, remove final items |
| Total Field Su... | 12.30 | |

**Internal Support - N/c - included in monthly property management fee**

| Date | Duration | Notes |
|------|----------|-------|
| 01/26/2017 | 0.30 | prepare certified mailings to service list |
| 01/27/2017 | 0.30 | add new receivership to insurance policy, add PNC Bank as additionally insured |
| 02/02/2017 | 0.30 | create Quickbooks operating account, setup tenant info & monthly rent |
| 02/21/2017 | 0.15 | scan/enter/pay bills |
| 02/21/2017 | 0.15 | communications with PNC re: bank account needed for receivership |
| 02/22/2017 | 0.15 | enter/process received rents, prepare for deposit |
| 02/27/2017 | 0.15 | communications with City re: transfer water bill into receiver'sname |
| 02/27/2017 | 0.15 | scan/enter/process received rent, prepare for deposit |
| 03/01/2017 | 0.15 | communications with Republic Services re: transfer service into receiver's name |
| 03/01/2017 | 0.15 | communications with PNC re: status onf new bank account |
| 03/03/2017 | 0.15 | scan/enter/process received rent, prepare for deposit |
| 03/06/2017 | 0.15 | communications with Republic Service re: status of scavenger contract |
| 03/10/2017 | 0.15 | communications with ComEd re: Transfer BLDNG service into receiver's name |
| 03/10/2017 | 0.15 | communications with Rose Pest Solutions re: switch service into receiver's name |
| 03/20/2017 | 0.15 | scan/enter/process received rent, prepare for deposit |
| 03/21/2017 | 0.15 | scan/enter/pay bills |
| 03/22/2017 | 0.30 | make a deposit |
| 03/30/2017 | 0.15 | scan/enter/process received rents, prepare for deposit |
| 03/31/2017 | 0.30 | make a deposit |
| 04/03/2017 | 0.15 | scan/enter/process received rents, prepare for deposit |
| 04/03/2017 | 0.15 | scan/enter/pay bills |
| 04/04/2017 | 0.15 | reconcile bank account |
| 04/06/2017 | 0.15 | scan/enter/pay bills |
| 04/06/2017 | 0.15 | make a deposit |
| 04/11/2017 | 0.15 | scan/enter/process received rents, prepare for deposit |
| 04/12/2017 | 0.30 | make a deposit |
| 04/18/2017 | 0.15 | communications with City re: inquire re: high water bill |
| 04/18/2017 | 0.15 | communications with ComEd re: request duplicate bill copy, 1st bill mailed not received |
| 04/19/2017 | 0.15 | enter/pay bills |
| 04/28/2017 | 0.15 | communications with ComEd re: start service under receiver's name for vacant unit 2-3 (former Moore |
| Total Internal ... | 9.00 | |

**Internal Support:Admin Support - N/c - included in monthly property management fee**

| Date | Duration | Notes |
|------|----------|-------|
| 01/19/2017 | 1.00 | preparation of 21 day notice, onboarding docs |
| 01/25/2017 | 0.30 | update tenant info |
| 02/02/2017 | 1.00 | property report info re: violations, taxes, listings, details |
| 02/28/2017 | 1.00 | update property report with updated data, action items, etc |
| 03/02/2017 | 0.15 | rent receipts to tenants |
| 03/23/2017 | 0.15 | emails with appraiser re: scheduling |

# A.R.E. PARTNERS INC.

## Time by Job Detail

### November 1, 2016 thru January 31, 2017

| Date | Duration | Notes |
|---|---|---|
| 03/27/2017 | 0:30 | update tenant file with lease info provided by Defendant |
| Total Internal ... | 4:30 | |
| **Receiver- Principal Support** | | |
| 01/18/2017 | 0:30 | phone conversation with Kyle Dillon re: receiver appointment, review of email order and follow up |
| 01/19/2017 | 1:00 | phone conversation w/CoryBaldwin PNC re: order, buyer information, followup call wKDillon re: expen |
| 01/25/2017 | 0:45 | continued attempts to reach Defendants counsel, phones out of order; no reponse to email, online re |
| 01/25/2017 | 2:00 | initial property visit, serve Receiver's notice, discussion tenants on site and on phone |
| 01/25/2017 | 0:30 | call to management sign number - reached Defendant Sergio, obtained updated attorney info; phone .... |
| 01/26/2017 | 0:15 | discussion w/CBaldwin, PNC re: property visit, items to be handled asap, and budget/staying in touc |
| 01/26/2017 | 0:15 | email to Defendant's atty NDuric re: docs/info on property, update to Plaintiff's attorney and bank |
| 02/08/2017 | 0:15 | compiled information re: attempts to contact Defendants attorney and obtain docs for Plaintiffs at |
| 02/15/2017 | 0:15 | followup w/Defenants attorney N. Duric re: court ordered docs/info, update to Plaintiff's attorney |
| 02/21/2017 | 0:15 | N/C email w/Plaintiff's attorney Kyle Dillon re: updated contact info |
| 02/24/2017 | 0:15 | followup w/Defenants attorney N. Duric re: court ordered docs/info |
| 02/24/2017 | 0:15 | discussion w/commercial tenant re: her lease and payment, information re: garbage colleciton |
| 02/28/2017 | 0:15 | emails with Plaintiff's counsel re: non-responsiveness of Defendant; followup with field support re |
| 03/02/2017 | 0:30 | review of email from Defendants attorney, response re: failure to provide, review of follow up emai |
| 03/02/2017 | 0:15 | N/C from PCook, Daycare re: lock changes |
| 03/07/2017 | 0:15 | review rent rolls |
| 03/08/2017 | 0:30 | call from Ms. Payton, atty for tenant Jasmine Love, followup email with court order and contact inf |
| 03/27/2017 | 0:45 | review of audit to Defendant docs sent, update to all attorneys; followup call w/Kyle Dillon, Plain |
| 03/27/2017 | 0:15 | N/C - email to Cory Baldwin re: BPO |
| 03/27/2017 | 0:30 | calls to all tenants re: access for appraiser, rents, common area maintenance updates |
| 03/30/2017 | 0:15 | overview of leaking issues w/field usppott, emergency call of Defendant re: roof access |
| 03/31/2017 | 0:15 | N/C - update to PNC and attorney re: leaking |
| 04/04/2017 | 0:45 | review of repair times from daycare, reviewing City of Chicago building department inspection - las |
| 04/10/2017 | 0:15 | discussion with PM re: unit 2-3 vacating, locks, coordinating final access |
| 04/11/2017 | 0:15 | phone call w/Kyle Dillon re: offer on the property, BPO and moving forward with marketing |
| 04/11/2017 | 0:15 | n/c - email w/Cory Baldwin re: roof issues |
| 04/16/2017 | 0:30 | review Defendant attorney responses to building repair, commercial unit responsibilities, review hi |
| 04/17/2017 | 0:30 | review roof/tuckpointing report and quotes; updates to Cory Baldwin, PNC |
| 04/17/2017 | 0:15 | N/C - update of Defendant attorney email to Cory Baldwin, PNC |
| 04/25/2017 | 0:15 | phone conversation with Cory Baldwin, US Bank, re: offer on property, moving forward |
| 04/27/2017 | 0:45 | review of Defendant attorney emails, commercial lease, and repair request from commercial tenant, e |
| Total Receive... | 14.00 | |
| **Total A.R.E. Part...** | **62.45** | |
| **TOTAL** | **62:45** | |